0 8 7 0 7 3 I invite September of veterans affairs. Good morning and may it please the Court. Mister Ross' case is distinguishable from this Court's decision in Ellington. Mister Ross has been rendered unemployable because of his service-connected heart condition from which depression and anxiety stem. Unlike Mister Ellington, Mister Ross submitted what VA would construe his claim for secondary service connection while his claim for compensation for his disabilities was pending. 38 CFR section 3.156B illuminates how section 3.310 should be interpreted in Mister Ross seeks only compensation for the loss of employment contemplated by the rating schedule. It is not disputed that he was unable to work since 1994. Mister Ross submitted what amounted to new and material evidence supporting increased compensation for his disabilities. The Ellington report rejected a per se rule requiring identical effective days for primary and secondary conditions as being illogical given that secondary conditions may not arise until years after the onset of the original condition. This is not the case here, Your Honors. Mister Ross' anxiety and depression stem from his heart condition and this overall disability picture led to his being unemployable. Therefore, the effective date for TDIU and the anxiety and depression should be the same as the effective date for Mister Ross' heart condition. In this case, VA requires Mister Ross to submit a claim for secondary service connection before he knows that he has been awarded service connection for his primary condition. Had he submitted evidence that his heart condition alone rendered him unemployable, VA could very well have awarded TDIU effective 1994. Or, the alternative, had Mister Ross submitted evidence that his heart condition was 100% disabling since the date of his claim. Then under, for example, Diagnostic Code 7001, he would have been awarded a 100% disability dating back to the date of his original claim. Instead, while his claim for compensation was pending, Mister Ross submitted evidence that his heart condition resulted in depression and anxiety, all of which combined to render him unemployable. Section 3.310 contemplates exactly this situation. Is there a legal question here or a facts question? Your Honor, there's a legal question. The interpretation of 3.310 and whether or not, in this set of circumstances, it's remarkably different than what this court said in 3 point, or I'm sorry, than what this court said in Ellington, namely that 3.310 only goes to establishment of service connection. In a case like this, 3.310 should be read expansively and should include the effective date as well when you have something like this that is such an inchoate part of the claim. But Mister Stolson, I mean, I think this really is a good question. I mean, this case may have presented a fact issue before Ellington. I'm sorry, excuse me, may have presented a legal issue before Ellington, but you're saying now that you recognize what Ellington held, but you're saying, no, my client's case is different. I'm not covered by And that's basically, though, an argument of application of law to fact, and that's beyond our jurisdiction. I mean, I guess what I'm saying is doesn't Ellington, at least on this issue, take away the ability to make a legal argument, which is the only thing we can consider. I would disagree with it being characterized as an application of law to fact because in this case, precisely what we're asking this court to do is to We did that in Ellington, whether rightly or wrongly, we did that in Ellington, and you're saying, okay, here's what the court said in Ellington, but my client's situation is different. That sounds like fact in the legal framework. But the Ellington court only went to speak to the situation in Ellington, and in that case, held at 3.310A only means, when you have a claim that is filed, a secondary claim that's filed two years after or however many years after, in that case, 3.310A means only effective date. That does not mean that 3.310A, when read in conjunction with the other regulatory scheme, as we pointed out in our opening and reply briefs, that 3.310A should not be interpreted to include effective date when read in conjunction with, for example, 5110B or 5110B2, which is a pure legal question. You're saying you do have a little daylight after Ellington to make a legal argument? Yes. There's a little daylight after Ellington, because this case has so many different legal ramifications. In this case, Mr. Ross submitted evidence, and as we pointed out under the regulatory scheme, submitted evidence that under 5110 should go back to the date of the original claim, which had always been pending since 1994, August of 1994, which is a purely legal matter, whether or not 3.3, whether or not the interpretation of 3.310 in a case like this, where there is new material evidence submitted while the claim is pending, whether 3.310A should be interpreted to allow for the assignment of an effective date. I would note that the government, which is now a certain lack of jurisdiction in this court, I don't think has asserted it here. No, Your Honor, not to my knowledge. If I'm wrong, they'll tell us. Unless there are no further questions, we ask this court to vacate the Veterans Court's decision and remand it for proceedings consistent with this court's decision, and I'll reserve the rest of my time for rebuttal. All right. Ms. Hibachi? May it please the Court, Mr. Ross's argument concerning Section 3.310 is controlled by this court's decision in Ellington and therefore should be rejected. Mr. Ross also raises another argument that secondary service connection should be considered a claim  also be rejected because a claim for secondary service connection is a claim for a separate and distinct disability, not a claim for increased compensation for the same disability. In Ellington, this court held that 3.310 concerned only entitlement to service connection and had nothing to do with the effective date of a secondary service connection claim. Mr. Ross attempts to distinguish Ellington in saying that he submitted an informal claim for secondary service connection during the appeal of the rating for an original condition. However, there's no authority that because a second and distinct claim was filed during the pendency of another claim that the two claims become merged. In fact, VA considers all claims separately. Therefore, the timing of it is irrelevant in an attempt to distinguish Ellington. You haven't argued lack of jurisdiction here because it's a question of law to fact. Why not? We have not asserted lack of jurisdiction because it does appear to be an interpretation of 3.310 in that Mr. Ross is arguing that 3.310 is applied differently in the situation in which there's a pending appeal on the primary condition and a claim for secondary service condition is filed as opposed to the situation in Ellington where there was a primary condition. The decision on that primary condition became final and then several years later there was a claim for secondary service connection. So we viewed that as a legal issue, though a legal issue controlled by Ellington. Additionally, we do believe the court has jurisdiction over Mr. Ross's claim concerning increased compensation and whether or not a claim for secondary service connection is a claim for increased compensation. A claim can only be an increase if it's an increase in the same disability. The Veterans Court's precedents, which they cited, the Wood and Dalton cases, involved claims for TDIU, which would be an increase in a disability that's already been service-connected. A secondary service connection claim, again, is a separate and distinct disability from whatever the primary disability is and therefore cannot be an increased compensation. What does secondary mean? It's connected in some way. Right. Secondary means that it's... What significance does that have other than with respect to effective date? It has no significance with respect to effective date. The significance it has is for service connection. For example, without 3.310, he would not be entitled to any compensation for his anxiety condition because the anxiety condition was not directly related to service. It didn't occur as a result of service. There is a second step in there, which is the heart condition. That means it's not secondary, right? Right. If it were a direct result of service, it would not be secondary. What I'm saying is if something is secondary, that means it's connected. Why doesn't... don't they get the effective date, original effective date? What else can connected mean in terms of consequence? Connected in terms of consequence means that there is a finding of service connection even though the secondary condition is not a direct result of service. It's an indirect result. So it's not secondary? It is secondary because it's secondary to service. You mean anything that happens later is secondary even if it's not connected? I believe so, yes. It's secondary in the sense that it's connected to something that is then... You mean secondary means a second... second ailment. Right. Secondary has to mean a second ailment. Not secondary to something else, but just a second. That's a funny use of a statutory word, or is it? It's a result of the first ailment. Ah, connection. That's correct, but it doesn't mean it's the same ailment. It's still two different ailments, one caused by the other, but still considered two separate ailments and given... In any event, Ellington settled that. Ellington settles that in terms of what 3.310 means when it says shall be considered part of the original condition. In terms of the new and material evidence, again, submission of new and material evidence has to raise a possibility of substantiating the pending claim. Here the pending claim was the primary condition, the heart condition. Evidence of anxiety is not evidence substantiating a claim of a heart condition. It's bringing up an entirely new claim, so 3.156 cannot get Mr. Ross an earlier effective date either. There are no further questions. We request that the court affirm the Veterans Court decision. Thank you. Mr. Stokes. To address the last point the government raised, it should assert that without 3.310 they would not be able to get service connection in a case like this. That's not entirely true. And it should also be read in conjunction with the fact that ultimately what's at issue here is a claim for unemployability. That's what gets him the maximum rating that he had always been seeking. The Veterans Court has jurisprudence in a case, an old case of theirs called AB which was cited in our brief, that states that the veteran is always seeking and in a system like this, a non-adversarial system, the veteran is always seeking the maximum amount of compensation he or she can be provided for their overall disability picture. Mr. Ross was never not seeking the maximum amount of compensation and his claim, unlike Mr. Ellington's claim which had closed and was then reopened later, his claim continued to be processed and he filed a notice of disagreement specifically with the rating decision that he said underrated his condition. After this NOD, this notice of disagreement was submitted, after he had submitted the notice of disagreement, he went out, got an opinion, said he was unemployable due to his heart condition from which the depression and anxiety stemmed. There's such a part of the same claim that it is different from Mr. Ellington's case. And indeed this court, as I pointed out before and was pointed out in our brief and was pointed out in Ellington, rejected a per se rule which I believe to judge Shaw's question does give me the daylight, does give Mr. Ross the daylight to come in and assert that legally in this case 3.310 should be read as it says, that it should be, that the claim for secondary service connection should be treated as the service-connected condition. Consistent with that, 3.156B and 5110 which are all part of the same VA scheme support the fact that 3.310 in a case like this with an always pending claim should be granted the same date, the same effective date as the underlying condition. Especially if, as in Mr. Ross' case, the anxiety and depression indisputably relate back to at least the effective date for the service-connected heart condition. There's nothing, there's no factual dispute here. He was unemployable, he was unemployable going back to the 80s and certainly since the effective date for the service-connected heart condition which is markedly different from Mr. Ellington's case in which his secondary condition arose years after. This claim has always been for the maximum amount of compensation. The maximum amount of compensation that VA ended up awarding was a 100% individual unemployability rate. He was unemployable all the way along. The rating schedule specifically contemplates under 4.1 that veterans are to be compensated for their loss of compensation. That is all Mr. Ross is asking here. If there are no further questions, we ask the court to vacate the The Honorable Court is adjourned until tomorrow morning at 10 a.m.